UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK



08 CV 01158

| | |
|---|---|
| LORI WEINRIB, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>CENTERLINE HOLDING COMPANY, MARC D. SCHNITZER and ROBERT L. LEVY,<br><br>                    Defendants. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Centerline Holding Company ("Centerline" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of purchasers of the common stock of Centerline between March 12, 2007 and December 28, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.  Plaintiff Lori Weinrib, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Centerline at artificially inflated prices during the Class Period and has been damaged thereby.

7.  Defendant Centerline, which maintains its principal executive offices at 625 Madison Avenue, New York, NY 10022, is an investment holding firm. Through its subsidiaries, it operates as a real estate finance and investing company.

8.  (a)  Defendant Marc D. Schnitzer ("Schnitzer") served as Centerline's Chief Executive Officer ("CEO") during the Class Period.

   (b)  Defendant Robert L. Levy ("Levy") served as Centerline's Chief Financial Officer ("CFO") during the Class Period.

   (c)  Defendants Schnitzer and Levy are collectively referred to herein as the "Individual Defendants."

9.  Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.  It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Centerline, by

2

virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Centerline, each of the Individual Defendants had access to the adverse undisclosed information about Centerline's business

prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Centerline and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Centerline common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme:   (i) deceived the investing public regarding Centerline's business, operations, management and the intrinsic value of Centerline common stock; and (ii) caused plaintiff and other members of the Class to purchase Centerline common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of Centerline during the Class Period, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Centerline common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Centerline or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Centerline; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21. Defendant Centerline is an investment holding firm. Through its subsidiaries, it operates as a real estate finance and investing company. The Company was formerly known as CharterMac Corporation.

22. The Class Period commences on March 12, 2007. On that day, the Company issued a press release announcing its financial results for the fourth quarter and full year 2006, the periods ending December 31, 2006. For the fourth quarter, the Company reported revenues of $127.9 million, and full year revenues of $387.25 million. The Company also reported that the fair value of its mortgage revenue bond portfolio had increased to $2.397 billion as of December 31, 2006, as compared to $2.294 billion at the end of 2005. Defendant Schnitzer commented on the Company's performance, stating, in pertinent part, as follows:

> We completed several major initiatives in 2006 that significantly changed our Company and transformed CharterMac from a firm focused mainly on affordable and multifamily housing to a full-service real estate finance and investment company. Our accomplishments included the acquisition of ARCap, one of the nation's leading high-yield CMBS fund managers, the launch of Centerbrook Financial, our credit risk products company, the rollout of a new credit approval process, the divestiture of two non-core investments and the completion of a corporate re-engineering. We believe that all of these initiatives will help create a more efficient operating structure and provide us with a best-in-class platform to grow and compete in a very competitive industry. Today we can provide a broad array of debt and equity products for any type of real estate property.

23. On April 3, 2007, the Company issued a press release announcing that CharterMac Corporation, as the Company was previously known, would be renamed Centerline Holding

Company. Defendant Schnitzer commented on this announcement, stating, in pertinent part, as follows:

> Over the past fifteen months, we completed several major transactions that transformed our company from a firm focused mainly on affordable and multifamily housing to a full-service real estate finance and investment company. We also recognize that we are a difficult company to understand and explain to our many stakeholders. We had evolved into a company that operated through a series of subsidiaries, with several different brand names. In order to simplify our story, we launched a re-branding process to learn how our brands were perceived by our customers, investors and employees. We learned, among other things, that it is critical to operate as one company, with one brand name and all 535 employees aligned with, and focused on, the success of that company.

24. On May 10, 2007, the Company issued a press release announcing its financial results for the first quarter of 2007, the period ended March 31, 2007. For the quarter, the Company reported revenues of $117 million and a net loss of $0.27 per share. The Company also reported that the fair value of its mortgage revenue bond portfolio had increased to $2.460 billion as of March 31, 2007. Defendant Schnitzer commented on the Company's performance, stating, in pertinent part, as follows:

> Due to the seasonality of our business, our origination volume across our business lines tends to be the slowest in the first quarter and as a result, our earnings and Cash Available for Distribution are not earned evenly throughout the year. In addition, our first quarter financial results were impacted by an impairment we recorded in connection with revenue bonds secured by mortgages on six properties and a charge to reserve against associated receivables. Therefore, *while our dividend payout ratio is above 100% in this quarter, we are comfortable that our annual dividend will continue to have adequate coverage*. We have solid investment pipelines in both our Commercial Real Estate Group and Affordable Housing Group and we continue to see a tremendous amount of transaction volume. In addition, we are working on several new growth initiatives we expect to launch in 2007. Based on the progress we have made executing our business plan to date, *we remain confident that we will meet our investment and financial goals for the year and do not believe it is necessary to revise our guidance at this time*. (emphasis added).

25. On August 9, 2007, the Company issued a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007. For the quarter, the Company reported revenues of $135 million and net income of $0.06 per share. The Company also reported that the fair value of its mortgage revenue bond portfolio had increased to $2.472 billion as of June

7

30, 2007. Defendant Schnitzer commented on the Company's performance, stating, in pertinent part, as follows:

> In the past few weeks, the financial markets have been impacted by a re-pricing of risk and withdrawal of liquidity due to the serious credit problems in the single-family subprime mortgage industry. Centerline does not have any single-family or subprime exposure whatsoever. We are a commercial real estate finance and investment company and provide financing only for commercial and multifamily properties. *As evidenced by our CAD growth this quarter, our core businesses continue to perform well and the credit quality of the investments we manage remains strong.*
>
> The recent market dislocation has created numerous opportunities to make investments that offer attractive risk-adjusted returns and strong credit quality. In times of market instability, we would expect to see a flight to quality that benefits firms like Centerline, that have a proven ability to assess and manage real estate risk. *We will monitor market conditions carefully as we continue to execute our core strategy.* (emphasis added).

26.     On November 8, 2007, the Company issued a press release announcing its financial results for the third quarter of 2007, the period ended September 30, 2007. For the quarter, the Company reported revenues of $158 million and net income of $0.17 per share. The Company also reported that the fair value of its mortgage revenue bond portfolio had increased to $2.578 billion as of September 30, 2007. Defendant Schnitzer commented on the Company's performance, stating, in pertinent part, as follows:

> Despite the ongoing credit crisis, Centerline had another solid quarter of operations. In very difficult market conditions, we closed a $585 million high-yield CMBS fund and priced and closed a $986 million CDO for one of our CMBS investment funds. *We believe these accomplishments are evidence of the strength of the Centerline brand and are a strong endorsement of our ability to assess and manage real estate risk.* (emphasis added).

27.     The statements referenced above in paragraphs 22-26 were materially false and misleading because they failed to disclose that: (i) the Company was in the process of disposing of its tax-exempt revenue bond portfolio, which had provided the Company with substantial revenues and enabled it to pay a sizable dividend; (ii) the Company was contemplating a large, related-party transaction that would require the Company to pay 11% interest per year to insiders; and (iii) as a

8

result of the foregoing, defendants' positive statements about the Company's performance and prospects were lacking in any reasonable basis at all relevant times.

## The Truth is Revealed

28.     On December 28, 2007, the Company issued a press release announcing that: (i) it had completed a securitization of its $2.8 billion tax-exempt affordable housing bond portfolio with Freddie Mac, which will result in one-time charges of $45 million to $55 million in the fourth quarter of 2007; (ii) it had received a $131 million investment from an affiliate of The Related Companies L.P. (the "Related Companies"), that provides the Related Companies – which is owned and controlled by Stephen M. Ross, Chairman of the Board of Centerline and the founder and Chairman of the Related Companies, and Jeff T. Blau, a managing trustee of both Centerline and the Related Companies, – with a dividend at an 11% annual distribution rate; (iii) the Company was repositioning itself as an alternative asset manager; (iv) the Company would be reducing its dividend from $1.68 per share to $0.60 per share; and (v) the Company would be reducing its 2008 earnings guidance to between $1.00 per share and $1.10 per share.

29.     Following this announcement, shares of Centerline's stock fell $2.57 per share, or more than 25%, to close at $7.70 per share, on very heavy trading volume.

30.     The market for Centerline's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Centerline's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Centerline common stock relying upon the integrity of the market price of Centerline's common stock and market information relating to Centerline, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Centerline's common stock, by publicly issuing false and misleading statements

and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Centerline's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Centerline and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein when the true facts were revealed to the public and the price of Centerline stock declined.

### Additional Scienter Allegations

33.     As alleged herein, Defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Centerline, their control over, and/or receipt and/or

modification of Centerline's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Centerline, participated in the fraudulent scheme alleged herein.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

34. At all relevant times, the market for Centerline's common stock was an efficient market for the following reasons, among others:

(a) Centerline stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Centerline filed periodic public reports with the SEC and the NYSE;

(c) Centerline regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Centerline was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

35. As a result of the foregoing, the market for Centerline's common stock promptly digested current information regarding Centerline from all publicly available sources and reflected such information in Centerline's stock price. Under these circumstances, all purchasers of Centerline's common stock during the Class Period suffered similar injury through their purchase of Centerline's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

36. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Centerline who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not

misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

40.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Centerline common stock. Plaintiff and the Class would not have purchased Centerline common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

41.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Centerline common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Centerline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Centerline, and their ownership of Centerline stock, the Individual Defendants had the power and authority to cause Centerline to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: February 4, 2008

COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

/s/ David A. Rosenfeld
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

ABRAHAM, FRUCHTER
    & TWERSKY, LLP
JEFFREY S. ABRAHAM
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: 212/279-5050
212/279-3655 (fax)

Attorneys for Plaintiff

## CERTIFICATION OF LORI WEINRIB
## IN SUPPORT OF CLASS ACTION COMPLAINT

Lori Weinrib ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, plaintiff executed the following transactions in the stock of Centerline Holding Company.: See Attachment A:

5. In the past three years, plaintiff has not served, nor sought to serve, as a representative party on behalf of a class in an action filed under the federal securities laws.

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

Dated: January 30, 2008.

_____
Lori Weinrib

# EXHIBIT A

| Date of Transaction | Type of Transaction (Buy or Sell) | Number of Shares | Price per Share |
|---|---|---|---|
| 08/16/2007 | Buy | 200 | $13.06 |
| 12/13/2007 | Buy | 100 | $10.63 |
| 12/19/2007 | Buy | 100 | $10.33 |