**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE CENTERLINE HOLDING COMPANY SECURITIES LITIGATION | Case No. 08 Civ. 00505 (SAS) |
|---|---|

**MEMORANDUM OF LAW OF ROSLYN GOLDENBERG, MITCHELL GOLDENBERG, JANE GOLDENBERG, MICHAEL GOLDENBERG AND LISA GOLDENBERG IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

## I. INTRODUCTION

Currently pending before the Court are three competing motions for appointment as lead plaintiff in these consolidated securities fraud class actions (the "Action"). Each of the three motions seeks appointment of a group of persons to serve as lead plaintiffs in the Action, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq*. While possessing the least amount of calculable losses, however, the Goldenbergs, alone, otherwise satisfy both the PSLRA's spirit and its requirements.

Since its passage, courts have clearly understood that Congress designed the PSLRA to eliminate perceived abuses in securities litigation by transferring primary control of private securities litigation from lawyers to investors. Many of this Court's sister district courts have recognized that unrelated groups of investors whom lawyers cobble together for the purpose of securing appointment as lead plaintiff – and the lucrative position of lead counsel – are inadequate lead plaintiffs. While the overwhelming majority of courts recognizes that groups of persons may serve together as lead plaintiffs, a healthy number of courts – including many of the Judges in this District – has recognized that only a group comprised of related persons is suitable to serve as lead plaintiffs. Those courts have so ruled because an unrelated group constitutes an artificial construct, manufactured by lawyers to serve their purposes and not the best interest of the class. That, according to many of the courts that have ruled on the issue, contravenes the very foundation of the PSLRA.

While the so called "Centerline Investor Group" and the Burns, Fryzer, Krevoy, Landau and Goldrich group, as amended ("Burns Group"), can each claim a larger combined financial interest in this Action than the Goldenbergs, the affiliation among the members of those two groups is wholly a construct of their lawyers; no evidence exists of a prior-existing relationship

between any of the investors comprising the two groups, that they have communicated about this litigation or that they have any plans to communicate in the future. Rather, the groups exist – cobbled together by lawyers – more to champion the interests of their counsel than the interests of the Class. A manufactured alliance – a gerrymandered group for the sole purpose of increasing the aggregated financial stake in the Action – is a manipulation of the lead plaintiff process and a subversion of Congressional intent in passing the PSLRA.

On the other hand, the Goldenbergs are a mother, her two sons and their spouses with a strong, pre-existing bond. Not only do they have a strong pre-existing bond, but they have communicated about this case and will continue to communicate among themselves and with their counsel as the litigation progresses. This Court, therefore, should reject the lawyer-constructed, lawyer-driven motions of the Centerline Investor Group and the Burns Group and, instead, appoint the Goldenbergs as Lead Plaintiff in the Action.

## II. STATEMENT OF THE FACTS

Pursuant to the PSLRA, on January 18, 2008, the Berger & Montague firm and their client, plaintiff Goldstein, published a notice, advising putative class members of the pendency of this Action, the claims involved, and their right to petition this Court to be appointed lead plaintiff. In response, no fewer than five competing motions were filed on March 18, 2008, seeking appointment in the Action as lead plaintiff. Of the five motions initially filed, three groups of plaintiffs continue to vie for the position of lead plaintiff as follows: one group of five unrelated investors woven by the Dreier and Kahn Gauthier firms from whole cloth that, after some further consideration and machinations by their counsel, became four members; another group of four unrelated investors, concocted by the Berger & Montague firm, but excluding

plaintiff Goldstein, the first plaintiff whom Berger & Montague used to file its original lawsuit; and the Goldenbergs, a family of investors.

The "Burns Group" is comprised of four or five – depending upon the date and the particular filing – unrelated investors, including, Tom Burns, Joseph Fyrzer, Melvin Krevoy and Stephen Landau. The four members of the Burns Group claim combined individual losses of $1,429,403.83.[1]

The Centerline Investor Group is comprised of four unrelated investors, including, J. Michael Fried, Joseph A. Braddock, Norman Millman, and Edward Friedlander, as trustee for the Ed Friedlander Trust. The four members of the Centerline Investor Group claim combined individual losses of $1,101,513.00. The Centerline Investor Group's counsel, Berger & Montague and Labaton Sucharow, filed the first complaint in these securities actions on behalf of Michael Goldstein. When the Berger and Labaton firms constructed their group, however, counsel omitted Mr. Goldstein. No evidence exists, indicating that Mr. Goldstein was aware that he was excluded from the Berger/Labaton lead plaintiff construct.

The Goldenbergs are five persons, related by blood and marriage, including Roslyn Goldenberg who is the mother of Mitchell and Michael Goldenberg. Michael Goldenberg is married to Lisa Goldenberg and Mitchell Goldenberg is married to Jane Goldenberg. Soon after the December 28, 2007 conference call, during which Centerline announced its plan to securitize its bond portfolio and cut its dividend, Mitchell and Michael Goldenberg contacted their lawyers directly, seeking legal advice related to the announcement and the losses they, their mother and

---

[1] On April 1, 2008 the Burns Group filed amended papers withdrawing Jona Goldrich as a plaintiff. Accordingly, the Burns Group was forced to lower its approximate combined losses from 1,579,969.00 to $1,429,403.83. The Burns Group's April 1, 2008 amendments came well after the March 18, 2008 deadline.

their wives suffered. The five members of the Goldenberg Group have a collective loss of $73,478.81.

## III. LEGAL ANALYSIS

Appointment of lead plaintiff and lead counsel is governed by the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also Weinberg v. Atlas Worldwide Holdings, Inc.* 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). The plaintiff or group of plaintiffs who timely file a motion to serve as lead plaintiff and who possesses the largest financial stake and who otherwise satisfies Fed. R. Civ. P. 23(a)'s typicality and adequacy requirements is the presumptive lead plaintiff. *Bhojwani v. Pistiolis*, No. 06-13761, 2007 U.S. Dist. LEXIS 96246 *21 (S.D.N.Y. July 30, 2007). The presumption, however, is rebuttable. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). It is clear that both the Centerline Investor Group and the Burns Group have larger losses than the Goldenbergs. Questions may exist about whether the individuals that comprise those groups otherwise satisfy the typicality and adequacy requirements of Rule 23, but their motions are bereft of any evidence whatsoever, so it is difficult to assess. Thus, the Goldenbergs must be able to rebut the presumption that both the Centerline Investor Group and the Burns Group are qualified to serve as lead plaintiffs. *Bhojwani*, 2007 U.S. Dist. LEXIS 96246 at *9.

If the appointment of the presumptive lead plaintiff would otherwise upset Congressional intent in passing the PSLRA, then courts are bound to look elsewhere for class representation. *See Id*. (selecting group with less aggregate loss because comported with Congressional intent). Congress passed the PSLRA over President Clinton's veto, in large part to end perceived manipulative practices by plaintiffs' lawyers and effectively to put control of private securities

litigation in the hands of plaintiff-investors. *See* H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730. *See also City of Brockton Ret. Sys. v. Shaw Group, Inc.*, No. 06 Civ. 8245 (CM)(MHD), 2007 U.S. Dist. LEXIS 72745 at * 9 (S.D.N.Y. 2007) ("We start with the understanding that Congress intended to avoid "the manipulation by class action lawyers of the clients whom they purportedly represent.").[2]

Here, the Goldenbergs are able to rebut the presumption to show that neither the Centerline Investor Group nor the Burns Group is the most adequate lead plaintiff under the PSRLA. The Goldenbergs are the movants that best satisfy the underlying goals of the PSLRA, best achieving Congressional intent. As such, for the reasons stated below, this Court should select the Goldenbergs as the most adequate lead plaintiff.

### A. A Collection of Unrelated Investors Should Not Constitute A "Group" Under the PSLRA

The Burns Group and the Centerline Investor Group do not satisfy the PSRLA because a group should only be comprised of investors with a pre-existing relationship or, minimally, some indicia that the members have acted as a group. *In re Tarragon Corp. Sec. Litig*., No. 07-07972,

---

[2] In *City of Brockton Retirement Sys.*, 2007 U.S. Dist. LEXIS 72745, the court wrote the language of the statute referring to a "group of persons" is "unspecific." To understand it, courts should look to Congressional intent, which, in the case of the PSLRA, was "to avoid 'the manipulation by class action lawyers of clients whom they purportedly represent." *Id*. at *9.

> "'To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiffs.'" One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation. . . . To allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."

*Id*. at *10 (quoting *Goldberger v. PXRE Group Ltd.*, 2007 WL 980417 at *3, *4 (S.D.N.Y. March 30, 2007) (quoting *In re: Pfizer, Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005)); *Jolly Roger Offshore Fund Ltd. v. BKF Capital Group*, 2007 WL 2363610, at *2 (S.D.N.Y. Aug. 16, 2007)).

2007 U.S. Dist. LEXIS 91418 *3-4 (S.D.N.Y. Dec. 6, 2007) (Absent evidence of communications among the group, promises to communicate in the future, or other indicia that the members will act as a group, the group as a whole is not "in a position to direct and control counsel").

Whether the Burns Group and Centerline Investor Group are cognizable groups under the PSLRA, turns on both Congressional intent and the PSLRA's meaning of the word "group." To determine that meaning, the Court must interpret the statute's language by giving the word its plain and ordinary meaning, unless otherwise defined in the statute. *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Perhaps, the most useful tool for determining the usual and ordinary meaning of a word or term is the dictionary. *See S. D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 377 (U.S. 2006). At least one federal court has analyzed dictionary definitions for the word "group" under the PSLRA and concluded that

> [t]he dictionary definitions attribute to 'group' certain characteristics. A "group" is, for example, a smaller, identifiable subset of a larger population, sharing a common, defining characteristic which serves to distinguish them from the larger population. The word, thus, means more than a mere random collection of unrelated individuals or things.

*In re: Telxon Corporation Sec. Litig.*, 67 F. Supp. 2d 803, 811 (N.D. Ohio 1999)[3]; *see also In re Flight Safety Technologies, Inc. Sec. Litig.*, 231 F.R.D. 124, 129 (D. Conn. 2005) (holding that "appointing eight unrelated and unfamiliar plaintiffs as co-lead plaintiffs, when no preexisting relationship is evident, would be counter to both the terms and the spirit of the PSLRA."); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (While a lead plaintiff

[3] In *Telxon*, the court relied on two separate dictionary definitions of "group," each of which implied a relatedness among the members of the group. *In re Telxon*, 67 F. Supp. 2d at 811.

'group' may be permissible, …aggregating parties 'that have nothing in common with one another beyond their investment is not an appropriate interpretation of the term group in the PSLRA.'").

An examination of the word "group" in the context of the statute further demonstrates that Congress intended the term to exclude groups which, like the Burns Group and the Centerline Investor Group, lawyers weave cobble together from a group of wholly unrelated persons. Throughout the text of the PSLRA, the word plaintiff remains in the singular. As one court observed, "[w]hile the [PSLRA] refers to 'a person or group of persons' as being capable of serving as the lead plaintiff, the surrounding statutory language forecloses the appointment of … multiple persons not part of a cohesive group." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 113 (D. N. J. 1999) ("apart from the sole reference to a 'group of person,' the [PSLRA] is worded in the singular, providing for a mechanism for the appointment of 'the most adequate plaintiff,' not the adequate plaintiffs."); *accord In re Telxon*, 67 F. Supp. 2d at 812.

Here, the moving papers of the Burns Group and the Centerline Investor Group indicate no preexisting relationship among the investors comprising either group. They offer no indication that the members of the groups ever communicated with one another about the Action or have any intention of ever communicating with one another in the future. Indeed, the moving papers of the Burns Group and the Centerline Investor Group fail to inform the Court of how they propose to communicate with one another, coordinate efforts, act collectively, resolve conflicts in opinion, and communicate with their counsel or, most importantly, how the group, as a whole, is "in a position to direct and control counsel." *In re: Tarragon Corp*., 2007 U.S. Dist. LEXIS 91418 at *3-4. Presumably, the law firms that jammed these investors together to aggregate the largest losses are aware of the intent of the PSLRA and the need to have effective

lead plaintiffs. Yet their papers reflect no attempt on their part to indicate how counsel had already or intended in the future to give the members of their fabricated groups any say over the litigation. To the extent they provide that information after filing their initial papers, it should be seen as too little too late.

In *Bhojwani*, 2007 U.S. Dist. LEXIS 96246, Judge McMahon acknowledged that another group, with two, unrelated members, had substantially higher losses than the family group he ultimately appointed. *Id*. at *9. Given those higher losses, Judge McMahon wrote, the family group must rebut the presumption that the larger, unrelated group is the most suitable plaintiffs. *Id*. In that case, the lawyers' having produced no evidence "about how and why the[ unrelated group] came together," Judge McMahon held that the two person group with the higher losses was "a 'lawyer driven' plaintiff engineered for the sole purpose of maintaining this lawsuit and attaining lead plaintiff status therein." *Id*. at *11. The Burns Group and the Centerline Group are nothing more.

Accordingly, it is clear that only the Goldenbergs constitute a "group" for purposes of selecting a "most adequate plaintiff" under the PSLRA.

**B. <u>The Losses of Unrelated Investors Should Not Be Aggregated</u>**

The PSLRA directs this Court to determine which movant has the largest financial interest, but the Court may consider the PSLRA's statutory objectives when reviewing losses that have been aggregated. The text of the PSLRA recognizes groups, but it is silent as to whether, or how, investors may aggregate their losses to achieve the largest financial stake in a case. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In the absence of clear textual guidance on the subject, courts should consider the PSLRA's statutory objectives before anointing as lead plaintiff a group of unrelated persons that will, in essence, abdicate to their lawyers the role Congress envisioned for

them. *See Aronson v. McKesson HBOC, Inc. et al.*, 79 F. Supp. 2d 1146, 1152-3 (N.D. Cal. 1999) ("The essential motivation behind Section 21D's lead plaintiff provision, which movants do not dispute, 'was to prevent lawyer-driven litigation.') (quoting *In re Donnkenny, Inc. Sec. Litig.*, 1717 F.R.D. 156, 157 (S.D.N.Y. 1997)); *Goldberger v. PXRE Group, Ltd.*, No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925 at *10 (S.D.N.Y. March 30, 2007) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.") (*citing In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005).

Here, the larger claimed losses of the Burns Group and the Centerline Investor Group are both the product of aggregation of losses suffered by unrelated investors. Accordingly, the PSLRA's statutory objectives encourage the rejection of the Burns Group's and the Centerline Investor Group's aggregated calculations of loss. On the other hand, the Goldenbergs are individual members of a nuclear family, a mother, her two sons and their spouses. In the words of Judge McMahon, "the relationship among the [Goldenbergs] is the closest and most natural imaginable; and the nature of the relationship among the group members makes it highly improbably (if not impossible) to conclude that the group was formed in bad faith by an attorney trying to conduct the sort of lawyer-driven litigation that the PSLRA was passed to eliminate." *Bhojwani*, 2007 U.S. Dist. LEXIS 96246 at *8-9.

Courts in the Southern District of New York have generally taken one of two approaches to the issue of aggregation of loss under the PSLRA. The first approach is a *per se* rule against aggregating the losses of unrelated plaintiffs to determine who is the most adequate plaintiff. *In re Razorfish*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001); *In re Donnkenny*, 171 F.R.D. 156. Courts adopting the *per se* rule against aggregation of unrelated investors recognize that "[t]o allow

lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation." *In re Razorfish*, 143 F.Supp.2d at 308-9 (citation omitted); *see also In re Doral Financial Corp. Sec. Litig.*, 414 F.Supp.2d 398, 401-2 (S.D.N.Y. 2006) ("by allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation."). Under the *per se* approach, the Court should reject the motions of the Burns Group and the Centerline Investor Group, holding instead that the Goldenbergs are the only adequate lead plaintiffs.

Courts in the Southern District have also followed a second approach which allows only limited aggregation utilizing a "rule of reason." *Barnet v. Elan Corp. PLC*, 236 F.R.D. 158 (S.D.N.Y. 2005); *In re eSpeed*, 232 F.R.D. 95, 99-100 (S.D.N.Y. 2005) ("Appointing a group of unrelated investors lead plaintiff could lead to a fragmentation and the problem of determining whose voice reigns…").[4] Under the "rule of reason" approach, the Burns Group's and the Centerline Investor Group's aggregations of loss are unacceptable. Under this inquiry, "the proposed 'group' is tested against its ability to represent the interests of the class, and only

---

[4] In *eSpeed*, this Court concluded that "a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements. *eSpeed*, 232 F.R.D. at 100. Directly thereafter, however, in ruling on the appropriateness of a group of related investors that included one unrelated investor, the Court employed a nuanced approach. The Court required that the aggregated losses of the group could not include the losses of the unrelated member. *Id*. the Court wrote, "If the Adib family has greater losses than the Pension Fund even without Weber, then Weber may be included in the group. . . . If the Adib family is dependent upon Weber's losses to establish aggregate losses greater than the Pension Fund's, then Weber will not be considered as part of the Adib Group." *Id*. Thus, this Court seemed to indicate that an unrelated group may exist, but that a sub-group of related persons must have losses that exceed all other parties that seek appointment as lead plaintiff. Under that assessment, only the Goldenbergs are a suitable group.

permitted to proceed as a group if the court determines that 'lawyer-driven' litigation is not likely to result." *Barnet*, 236 F.R.D. at 162.[5]

Here, the Burns Group and the Centerline Investor Group fail this test. The Burns Group's and the Centerline Investor Group's aggregations are unacceptable because there is no evidence that the investors composing the Burns Group and the Centerline Investor Group have any preexisting relationship. The only common link among the investors comprising these two groups is their attorneys, a fact that clearly highlights the substantial and warranted influenced possess by the two groups' attorneys. Indeed, the lawyers for the individual plaintiff who filed the first of the consolidated actions, *Goldstein v. Centerline Holding Company, et al.*, No. 08-CV-00505-SAS, omitted Mr. Goldstein from ***their*** Centerline Investor Group. The Burns Group aggregates the losses of first four then three persons but submitted no affidavit from the ***client*** that the lawyers, themselves, ultimately removed from the Group, indicating that he knew he was in the Burns Group or knew that he had been removed. Such manipulations by counsel obstruct the PSLRA's mandate and should give this Court not comfort that either the Burns Group or the Centerline Group will adequately represent the interests of the Class in the Action.

Moreover, and critically, as stated above, neither counsel for the Burns Group nor counsel for the Centerline Investor Group has made any mention to this court about how the groups they created are structured, how the members have communicated, how they will communicate, whether they have discussed fees with their clients or any other indicia of normal representation of clients. Thus, under the "rule of reason" test, as well as the *per se* test, the Court should reject the motions of both the Burns Group and the Centerline Investor Group in favor of the Goldenbergs.

---

[5] A third approach that allows absolute aggregation has been sparingly recognized and "has had few active proponents." *Burke*, 102 F. Supp.2d at 1322.

### C. The Losses of the Members of the Burns Group and the Centerline Investor Group Should Not Be Considered Individually

Moreover, once the Court determines that the Burns Group and the Centerline Investor Group are inadequate as groups, it should not consider the application of any individual member thereof to stand on his or her own. This is so because the individual investor's membership and alleged participation in a lawyer-manufactured group conclusively demonstrates their inability to direct the Action and to exert any control over their lawyers. Indeed, no evidence exists that any of the individual group members knew they were part of a group or were consulted prior to counsels' lumping them together into their respective groups.

In an effort to hedge its bets, in a footnote, the Burns Group claims that "each member of the Burns Group is willing to serve individually as Lead Plaintiff..." Burns Mem. at 7 n.5. But this statement ignores that each was willing to serve as a pawn for their counsel in a grouping with no intra-relatedness. Mere willingness to direct this litigation is insufficient. As noted above, "[t]he essential motivation behind Section 21D's lead plaintiff provision . . . was to prevent lawyer-driven litigation." *Aronson*, 79 F. Supp. 2d at 1152-3. Here, the individual members of the Burns Group and Centerline Investor Group have exhibited an inability to assert their own prerogatives when necessary to prevent lawyer-driven litigation. Accordingly, the members of the Burns Group and the Centerline Investor Group should not be considered individually for designation as lead plaintiff.

## IV. CONCLUSION

For the reasons stated above, the Court should grant the Goldenberg's motion for consolidation, appointment of lead plaintiff and approval of counsel and, in turn, deny the competing motions.

Dated: April 4, 2008 Respectfully submitted,

FARUQI & FARUQI, LLP

s/ Antonio Vozzolo
Antonio Vozzolo
Richard D. Schwartz
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: avozzolo@faruqilaw.com

and

Jacob A. Goldberg
2600 Philmont Avenue, Suite 324
Huntingdon Valley, PA 19006
Tel: (215) 914-2460
Fax: (215) 914-2462
Email: jgoldberg@faruqilaw.com

MARCUS & AUERBACH, LLC
Jonathan Auerbach
Jerome M. Marcus
400 Greenwood Avenue, Suite 2000
Wyncote, PA 19095-1825
Tel: (215) 885-2250
Fax: (888) 875-0469
Email: auerbach@marcusauerbach.com

***Proposed Co-Lead Counsel***